12596

STATE v. BOLIN

(146 S. E., 695)

*Mr. G. W. Speer,* for appellant,

*Solicitor I. C. Blackwood* for respondent.

February 18, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The appellant was convicted in the Court of General Sessions of Sherokee County before his Honor, Circuit Judge Wilson, and a jury, for violation of the prohibition law; the specific charge being that he unlawfully received, and had in his possession, contraband liquor. He was sentenced to pay a fine of $500.00, or to serve six months' imprisonment. He has appealed to this Court on seven exceptions.

The first, second, and fifth exceptions relate to the admission of testimony on the part of the State, to which the appellant interposed objection, and all of these may be disposed of together. The main charge was that appellant had unlawful alcoholic liquors in his store, about a half gallon. The peace officers who searched the store and surrounding premises, testified they found five gallons of whiskey in a cow barn, some fifty yards from defendant's combined store and dwelling. Appellant claimed the barn was in no way controlled by him, but that it was in the possession of one Tom Sausing, and his objection to the evidence was based on that ground. There was other evidence that the barn was very close to the appellant's garage, and a toilet, which he and some of his neighbors used in common, and one of the officers testified that all of these small buildings, with a garden and chicken yard, were "all connected up to the house there, and Bolin's store and all; it was all fenced in around there." In addition, there

was testimony that the fruit jars, containing the whiskey found in the barn, were similar to the half-gallon fruit jar found in the store. We think there was no error in the Judge's rulings as to the testimony complained of.

Exceptions 3, 4, and 6 relate to the failure to direct a verdict for the appellant, and the refusal to grant him a new trial. The burden of these exceptions is that the only alcoholic liquor properly chargeable to appellant's possession was the half gallon found in the kerosene tank in the store, and that was not for beverage purposes, but poisonous, and not denounced by statute. To understand the exceptions last mentioned, it is necessary to relate some of the testimony, not heretofore referred to. Appellant swore that he had no alcoholic beverages in his store, and that he did have an alcoholic preparation, which he sold, in connection with gasoline and oil, for automobile purposes in cold weather; that he had recently waited on a customer, who purchased some of the automobile alcohol, and, upon coming back into his store, he had placed a half-gallon fruit jar partly filled with this alcohol, on the kerosene tank; that in a scuffle with the officers, who seized him, and whom he thought might be robbers, this jar of alcohol fell into the kerosene.

But the officers told a different tale. They testified that, when the appellant saw them preparing to execute the search warrant they had, the appellant threw the fruit jar into the kerosene, and one of the officers quickly pulled it out, and that it was filled with corn whiskey and kerosene mixed. The State also showed that a chemist's examination of the rescued mixture disclosed alcohol to the extent of 45 per cent. We agree with the appellant that the stuff was poisonous when it came from the kerosene tank, and, likely, it was poisonous before it went in. But, poisonous or not, the question was whether or not it was corn whiskey, and not automobile alcohol, the appellant had in his possession. The evidence as to that was entirely sufficient for the jury

to pass upon the question, and to sustain the ʹtrial Judge's refusal to disturb the verdict.

Exception No. 7 is as follows: "Because the sentence ▉▉ of $500.00 or six months' service on the public works of the County is oppressive and unreasonable, especially in view of the statement made by his Honor to the defendant when he sentenced him, that he had been making inquiries along about him, and, unfortunately, those inquiries were against him; the defendant was not only deprived of a right to reply to those inquiries, and, not knowing what information the Court had, the defendant was deprived of that fair treatment he was entitled to when sentenced."

The exception really only imputes error as to the sentence imposed, because it was excessive. In the argument, however, it seems the position is taken that Judge Wilson made "private investigations" as to the appellant; that the sentence imposed was the result of these, and, therefore, there was error. We shall do the appellant the fairness to treat the one exception as if there were two exceptions, raising both the questions. The sentence to be imposed for violation of the prohibition law is within the discretion of the presiding Judge, so long as he stays within the limitations fixed by the Legislature. There is no such ground here upon which this Court can interfere with the sentence in this case.

The agreed "statement of facts" shows that, in pronouncing the sentence, the trial Judge stated to the defendant, "I have made some inquiries along, and, unfortunately, they are not in your favor." We find nothing else in the record concerning this matter. The appellant urges that the Judge must have meant "private" inquiries that he had made, and he contends that this should at least affect the setting aside of the sentence, under the case of *State v. Harvey*, 128 S. C., 447, 123 S. E., 201. We are unable to agree with the appellant in his contention. The *Harvey case* does hold that the trial Judge erred in conferring with the Solicitor and

another person, in private, when neither the defendant nor his counsel was present, as to the case against the defendant.

The latest utterance of this Court on that subject was in *State v. Rickenbacker,* 138 S. C., 24, 135 S. E., 651, where it was held: "Trial Judge, in passing sentence, may secure information in open Court in presence of defendant, without violating defendant's rights, under Const., Art. 1, § 18." (Syllabus.) If the record showed that the presiding Judge, except in open Court, received information unfavorable to the defendant's case, his reputation, or his character, under the *Harvey* and *Rickenbacker cases,* and *State v. Simms,* 131 S. C., 422, 127 S. E., 840, we would have to set aside the sentence, and remand the case for the imposition of a new sentence. But the record does not so show. We cannot hold, even when so suggested by the appellant, that the presiding Judge acted contrary to the principles announced in the cited cases, unless the transcript of record bears out the holding. To the contrary, without a positive showing otherwise, we must presume that he did comply with the law as announced in the cases mentioned.

The language attributed to Judge Wilson did not mean, from our study of the record, that he had conferred privately with any one as to the defendant or his case. The record shows that at least five times during the course of the trial the trial Judge made inquiries of witnesses as to the facts of the case, all of his questions being asked in a fair and impartial manner, for the sole purpose of bringing out the truth. We agree with Judge Wilson that, "unfortunately" for the appellant, "some of the inquiries" did not result "in his favor"—one, for instance, that in the store there was found a crate of flat pint bottles. We think it apparent that the presiding Judge, in his remarks to the defendant, was referring to the inquiries we have pointed out.

Another thing of influencing effect is the fact that no effort was made to ascertain, at the time of the remarks of

the trial Judge, if he meant to convey the impression that he had received, privately, adverse information as to the appellant. If the appellant and his counsel had any reason to even suspect that such was the case, further "inquiry" should have been made by counsel at that time, so the matter could have been absolutely cleared up, if there was doubt. Those who know the life and character of Hon. John S. Wilson, and his courteous performance of the duties of the office of Judge, are assured that he would have so spoken that every particle of even the remotest doubt would have been immediately removed, in a frank and cheerful manner.. The exception under consideration must be overruled.

The judgment of the Court is that the judgment below be, and the same is, hereby affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER, and CARTER concur.